# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

MARQUES AVONTA BUTLER,

               Defendant.

Case No. 2:17-cr-00167-JAD-NJK

REPORT AND RECOMMENDATION

(Docket No. 18)

       This matter was referred to the undersigned Magistrate Judge on defendant Marques Avonta Butler's motion to suppress evidence. Docket No. 18. The Court has considered Defendant's motion and exhibits, the United States' response, and Defendant's reply. Docket Nos. 18, 19, 22, 25.

## I.    BACKGROUND

       On March 17, 2017, Las Vegas Metropolitan Police Department (LVMPD) Officer J. Bonaduidi obtained a state search warrant, signed by a state judge, for the property located at 717 Delores, Las Vegas, Nevada. *See* Docket No. 18-1.[1] The warrant authorized the search of the entire residence, including the garage. *Id*. at 25. The affidavit in support of the search warrant submits that, in March 2017, the affiant was informed by a confidential source that a person named "Danny" was selling narcotics at the Delores property. *Id*. at 5. The source also stated that a

---

[1]    Both parties relied upon the discovery provided by the United States for their recitation of facts. *See, e.g.*, Docket No. 18 at 2, n. 1; Docket No. 22 at 2-5. The Court therefore derives its factual background from the same documents and recordings.

second person, known as "Uncle Reggie," was also involved in selling narcotics from the property. *Id*. at 6.

The affidavit states that narcotics officers conducted an interview with a second confidential source. *Id*. This source gave similar information regarding drug sales occurring out of the garage of the residence. *Id*. at 6-7. The source stated that the people selling the drugs were known as Danny and Uncle Reggie. *Id*. at 7. The source further stated that, in February 2017, an incident occurred at the residence, during which Uncle Reggie was killed and Danny was shot in the leg. *Id*.

The affidavit demonstrates how law enforcement determined that the residence at 717 Delores was the one discussed by the confidential sources. *Id*. at 7-8. Further, the affiant determined that a homicide occurred at the residence on February 7, 2017. *Id*. at 8. The affidavit states that an unknown subject knocked on the closed garage door of the residence and then proceeded to the front door. *Id*. When the front door began to open, the affidavit states, the unknown subject began firing through the door. *Id*. As a result, Reginald Carr was killed and Danny Burks, a.k.a. Pops, was wounded in the leg. *Id*.

The affidavit states that the investigation into the homicide at the residence corroborated the information provided by the two confidential sources. *Id*. Specifically, the investigation found that Danny Burks was living in the garage of the property and selling methamphetamine. *Id*. at 9. The investigation further found that, if the garage door was open, customers would proceed through it; if the garage door was closed, customers would knock on it and then proceed to the front door of the property. *Id*.

The affidavit describes the use of a confidential informant ("CI") in the instant narcotics investigation. *Id*. at 11. On March 16, 2017, the CI approached the property and entered the

2

partially open garage door. *Id*. at 12. After approximately one minute, the CI exited through the same door. *Id*. The CI handed law enforcement officers a plastic baggie containing purported methamphetamine that had been purchased inside the garage of the property. *Id*. at 12-13. The CI stated that he/she had purchased the methamphetamine from "Pops." *Id*. at 13. Further, the CI stated that "Pops" told him/her that, in February 2017, someone tried to rob him and that is when the homicide occurred. *Id*. at 13-14. The CI was shown a picture of Danny Burks and stated that the person in the picture looked like "Pops," but that the CI could not be positive because "Pops" was wearing sunglasses and had the hood of his sweatshirt around his head. *Id*. at 14.

On March 16, 2017, the affidavit submits, officers interviewed a third confidential source. *Id*. This source stated that a person named Danny is selling methamphetamine at the Delores property. *Id*. at 15. The source further stated that, to purchase methamphetamine from Danny, a customer knocks on the garage door and then walks to the front door of the property where Danny will meet the customer and sell the methamphetamine. *Id*.

On March 17, 2017, the affidavit states, officers observed an unknown male walk up to the garage of the Delores property, knock on the garage door, and proceed to the front door. *Id*. at 16. The unknown male waited at the front door for approximately one minute before leaving the property. *Id*. On the same date, a CI approached the property, knocked on the garage door, proceeded to the front door, and waited with no answer twice. *Id*. at 17. After the CI left the property, officers observed Danny Burks get out of a vehicle and enter the property. *Id*. As a result, the CI was instructed to return to the property. *Id*. at 17. While the CI was on his/her way to the property, surveillance officers observed Danny Burks exit the front door of the Delores property and leave the area in a vehicle. *Id*. at 18. The CI approached the property, knocked on the garage door, and proceeded to the front door, where he/she stood for a time and then left. *Id*.

The CI told law enforcement officers that he/she had been told through the closed front door of the property that "Pops" was not home. *Id.* Surveillance officers later observed Danny Burks return to the property. *Id*. at 19.

On March 18, 2017, LVMPD officers executed the state search warrant at the Delores property. Docket No. 18 at 2. When they arrived, Defendant and two other men were standing in the driveway of the property. *Id*. at 3. Officers ordered the men to put their hands above their head and slowly walk off the property, and the men complied. *Id.* Officers observed a firearm in Defendant's waistband, which led to his arrest. *Id.*

On June 6, 2017, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Docket No. 1. Defendant now asks the Court to suppress the firearm found on his person on March 18, 2017, as well as any post-arrest statements he made about the firearm and any unspecified "evidence obtained from execution" of the search warrant. Docket No. 18.

## II.    ANALYSIS

### A.    Evidentiary Hearing

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

1    "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a

2    defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual

3    issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at

4    933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned

5    discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended*

6    *by* 609 F.2d 433 (1979). In the instant case, Defendant requested an evidentiary hearing; however,

7    both parties relied upon the same reports, search warrant, and body camera footage generated by

8    LVMPD in presenting the facts. The Court concludes that no contested issues of fact exist that

9    require an evidentiary hearing in this matter, and the Court will therefore decide the motion on the

10   moving and responsive papers, including the exhibits submitted with the papers.

11              **B.      Motion to Suppress**

12           Defendant asks the Court to suppress the gun recovered from his person, any evidence

13   recovered during the execution of the search warrant, and all statements regarding the firearm. *See*

14   Docket No. 18. In support of his request, Defendant submits that the search warrant the officers

15   were executing at the Delores property was overbroad in authorizing the search of the residence

16   itself as opposed to just the garage. *Id*. at 6. Therefore, Defendant submits, the search warrant

17   was facially invalid. *Id*. Defendant submits that officers never observed drug sales from the front

18   door of the residence and never observed Burks inside the residence itself. *Id*. Defendant further

19   submits that the garage and residence are two separate dwellings and, therefore, required separate

20   search warrants. *Id*. at 7. As the warrant was overbroad and facially invalid, Defendant submits,

21   it was unreasonable for officers to conduct the search of the residence. *Id*. at 8. Therefore,

22

23

5

1  Defendant asks the Court to suppress the firearm found on him and any statements he made about

2  the firearm.[2]  *Id.*

3         In response, the United States submits that the affidavit provides specific information that

4  constitutes probable cause for the search of both the residence and the garage.  Docket No. 22 at

5  8.  Specifically, the United States submits, the affidavit "contains repeated references from

6  independent sources that some people seeking to obtain drugs from Danny would, at some point,

7  use the front door of the residence."  *Id.*  One source, the United States submits, told law

8  enforcement that a customer will knock at the garage door and then walk to the front door of the

9  residence, "where Danny will meet them and sell them methamphetamine."  *Id.*  This information,

10 submits the United States, was corroborated by the homicide investigation and the CI.  *Id.*  Further,

11 the United States submits that the information in the affidavit clearly and repeatedly demonstrates

12 that Danny has a connection to the residence itself.  *Id.* at 9.  Specifically, surveillance officers

13 observed Danny walk inside the residence and later leave from the front door of the residence.  *Id.*

14 at 9-10.  Further, a source told police that Danny would sell methamphetamine from the front door

15 of the residence.  *Id.* at 10.  Finally, the homicide investigation determined that Danny and Uncle

16 Reggie, both selling drugs from the residence, were shot as they opened the front door of the

17 residence to someone who had initially knocked on the garage door.  *Id.*  The United States further

18 submits that, even without the information connecting Danny to the residence, it is clear that the

19 residence and attached garage are not separate dwellings.  *Id.* at 10-11.  Finally, the United States

20 ────────────────

21 [2]      Defendant submits throughout his motion that he asks for suppression of any evidence
   obtained from the search of the residence.  *See* Docket No. 18.  It is not until the final paragraph
22 of his motion, however, that Defendant clarifies that the evidence he asks the Court to suppress is
   solely the firearm recovered off his person outside the residence.  *Id.* at 8.  Further, though
23 Defendant asks the Court for suppression of his statements, he presents no caselaw in support of
   his request.  *Id.*

submits that the firearm was seized from Defendant's waistband as he stood outside the residence in the driveway and that detention of individuals at the location of the execution of a search warrant is permissible. *Id*. at 5.

In reply, Defendant submits that the probable cause in the search warrant affidavit supported a search of the garage, but not the residence. Docket No. 25 at 2-4. Since probable cause did not exist for the search of the residence, Defendant submits, the search warrant was overbroad and invalid. *Id*. at 5. As a result, Defendant asks the Court to suppress the firearm found on his person and any statements he made. *Id*. at 6.

## 1. Validity of Search Warrant

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept turning on the assessment of probabilities and the particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. *Id*. at 232. Determining whether probable cause exists "turn[s] on the assessment of probabilities in particular factual contexts." *Id*. The concept does not deal with hard certainties, but with probabilities. *Id*. at 241; *see also Brinegar v. United States*, 338 U.S. 160, 175 (1949) (Probable cause deals with "probabilities" which are not technical, but factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians act). The United States Supreme Court has repeatedly emphasized that the probable cause standard is a "practical, non-technical conception." *Brinegar*, 338 U.S. at 175.

The probable cause standard for a search warrant is whether, based on common sense considerations, there was "a fair probability that contraband or evidence of a crime [would] be

7

found in a particular place." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992) (citing *Gates*, 462 U.S. at 238). The magistrate judge need not determine "that the evidence is more likely than not to be found where the search takes place.... The magistrate [judge] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) (citation and internal quotation marks omitted). Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050–51 (9th Cir. 2007) (citing *Gates*, 462 U.S. at 246 (1983) and *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*)).

The *Gates* decision made it clear that a magistrate judge's decision regarding probable cause should be given great deference. The duty of a reviewing court is to insure that the issuing judge had a substantial basis for concluding that probable cause existed. The Supreme Court has declined to articulate a "neat set of legal rules" for evaluating probable cause, *Gates*, 462 U.S. at 232, and instead has instructed magistrate judges to determine probable cause by considering the "totality-of-the-circumstances," *Gates*, 462 U.S. at 230. In issuing a search warrant, the magistrate judge simply must determine whether there is a "fair probability" that evidence of a crime will be found. *Id.*, 462 U.S. at 238, 246. A reviewing court is required to examine all circumstances set forth in the affidavit, and in doubtful cases, to give preference to the validity of the warrant. *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985).

It is well recognized that law enforcement officers can rely on their own experience and the experience and information of other law enforcement officers in establishing probable cause. *United States v. Butler*, 74 F.3d 916 (9th Cir. 1996). Similarly, "a magistrate [judge] may rely on the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir. 1987). *See also United*

8

1    *States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991) ("in weighing the evidence supporting a

2    request for a search warrant, a magistrate [judge] may rely on the conclusions of experienced law

3    enforcement officers regarding where evidence of a crime is likely to be found").  An officer need

4    not include all of the information in his possession to obtain a search warrant.  An affidavit need

5    only show facts adequate to support the finding of probable cause.  *United States v. Johns*, 948

6    F.2d 599, 605 (9th Cir. 1991).

7          The Court finds that the search warrant affidavit contains numerous references to the

8    residence itself, as well as to the garage.  The affidavit states, among other things, that drug

9    customers would knock on the garage door and then the front door; that Danny was shot at the

10   front door with Uncle Reggie while selling drugs; that a source told law enforcement that Danny

11   would meet customers at the front door to sell them methamphetamine; and that officers observed

12   Danny entering and exiting the front door of the residence.  In  looking  at  the  totality  of  the

13   circumstances, the Court therefore finds that a fair probability existed that evidence of a crime

14   would be discovered both in the residence itself and in the garage, as specified in the affidavit and

15   that the search warrant is therefore valid.[3]  *See Gates*, 462 U.S. at 230-31.

16                              **2.  Detention of Defendant**

17          The facts demonstrate that Defendant was contacted on the driveway outside the residence

18   and that the firearm was located on his person prior to the execution of the search warrant.

19   Defendant submits that he is an occupant of the residence and was standing in the driveway as the

20   officers arrived.  It is well-established that law enforcement officers may detain an occupant who

21

22   [3]      Since the Court finds that the affidavit provides probable cause for a search of both the
     residence and the garage, the Court need not reach Defendant's argument that the residence and
23   garage constitute separate dwellings.

1  is on the premises to be searched – or in the immediate vicinity of the premises to be searched –

2  during the execution of a search warrant. *Bailey v. United States*, 568 U.S. 186, 193-202 (2013).

3  To define what constitutes the immediate vicinity, the Court directed trial courts to examine

4  whether the defendant was detained within "the lawful limits of the premises, whether the occupant

5  was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and

6  other relevant factors." *Id*. at 201. As Defendant was standing in the driveway of the residence,

7  he was clearly within the lawful limits of the premises and was therefore properly detained and the

8  firearm was properly recovered after the officers observed it in his waistband.[4]

9                           **3.  Statements Regarding Firearm**

10         Defendant asks the Court to suppress any statements he made about the gun. Defendant

11  fails, however, to submit any point and authorities in support of this request, or to develop this

12  request in any manner. Rather, his sole argument consists of two conclusory sentences. Docket

13  No. 18 at 3, 8.

14         "[J]udges [are not required] to anticipate and join arguments that are never raised by the

15  parties. *See United States v. Griffiths*, 47 F.3d 74, 77 (2d Cir. 1995). Instead courts rely on the

16  litigants not only to cite relevant precedents, but also to frame the issues for decision." *United*

17  *States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010). Defendant's two conclusory sentences fail to

18  meet this standard. Therefore, the Court finds that Defendant waived any arguments regarding

19  suppression of his statements. *See Kiessling v. Rader*, 2018 WL 1401972, at *3 (D. Nev. Mar. 20,

20  2018) ("The appropriate time to raise these additional arguments has passed as Defendants should

21  _____

22  [4]    Defendant's entire argument for suppression relies upon the validity of the search warrant
   and he does not argue that, if the search warrant was valid, his detention or the officers' recovery
   of the gun on his person was unlawful. Nonetheless, as the United States raised the issue in
23  response, the Court addresses it.

1  have raised these arguments before Judge Koppe"); *see also Kor Media Grp., LLC v. Green*, 294

2  F.R.D. 579, 582 n.3 (D. Nev. 2013) (courts only consider meaningfully-developed arguments).

3  **III.    RECOMMENDATION**

4      Based on the foregoing and good cause appearing therefore,

5      IT IS RECOMMENDED that Defendant's motion to suppress evidence and statements,

6  Docket No. 18, be **DENIED**.

7      DATED: November 20, 2019.

8

9                                                    _____

                                                     NANCY J. KOPPE

10                                                   UNITED STATES MAGISTRATE JUDGE

11                                              **NOTICE**

12      This report and recommendation is submitted to the United States District Judge assigned

13  to this case pursuant to 28 U.S.C. § 636(b)(1).   A party who objects to this report and

14  recommendation must file a written objection supported by points and authorities within fourteen

15  days of being served with this report and recommendation.   Local Rule IB 3-2(a).   Failure to file

16  a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951

17  F.2d 1153, 1157 (9th Cir. 1991).

18

19

20

21

22

23